UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
INTERNATIONAL FUND                          :
MANAGEMENT S.A., *et al.*,                  :
                                            :        09 Civ. 8755 (SHS)
                        Plaintiffs,         :
                                            :
            -against-                       :
                                            :
CITIGROUP INC., *et al.*,                   :
                                            :
                        Defendants.         :
--------------------------------------------------------------x
NORGES BANK,                                :
                                            :        10 Civ. 7202 (SHS)
                        Plaintiff,          :
                                            :
            -against-                       :
                                            :
CITIGROUP INC., *et al.*,                   :
                                            :
                        Defendants.         :
--------------------------------------------------------------x
SWISS & GLOBAL ASSET                        :
MANAGEMENT AG, *et al.*,                    :
                                            :        10 Civ. 9325 (SHS)
                        Plaintiffs,         :
                                            :
            -against-                       :
                                            :
CITIGROUP INC., *et al.*,                   :
                                            :
                        Defendants.         :
--------------------------------------------------------------x
UNIVERSAL-INVESTMENT-GESELLSCHAFT           :
MBH, *et al.*,                              :
                                            :        11 Civ. 314
                        Plaintiffs,         :
                                            :        <u>OPINION & ORDER</u>
            -against-                       :
                                            :
CITIGROUP INC., *et al.*,                   :
                                            :
                        Defendants.         :
--------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

Plaintiffs in these four actions are members of the putative classes in *In re Citigroup, Inc. Bond Litigation* and *In re Citigroup, Inc. Securities Litigation* that have opted to bring suit in their own name.  They are investors in the securities of defendant Citigroup, Inc., and they allege that the company, and certain of its affiliates, officers, and directors violated federal securities laws and other statutory and common law duties.  The substance of plaintiffs' complaints mirrors the complaints in the *Bond* and *Securities* actions.  Defendants have moved to dismiss the complaints pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, that motion is granted in part and denied in part.

## I.     BACKGROUND

### A.  The Parties

Purchasers of Citigroup securities in both domestic and European offerings bring these four actions.  The first of the four, *International Fund Management et al. v. Citigroup et al.*, was initiated in October 14, 2009.  Plaintiffs in this action are twelve European investment firms— International Fund Management S.A., Deka International S.A. Luxemburg, Deka Investment GmbH, BayernInvest Kapitalanlagegesellschaft mbH, HansaInvest Hanseatische Investment-GmbH, Metzler Investment GmbH, Nord/LB Kapitalanlagegesellschaft AG, INKA Internationale Kapitalanlagegesellschaft, Swiss Life Investment Management Holding AG, LGT Funds AGmvK, Kepler-Fonds Kapitalanlagegesellschaft mbH, ETFlab Investment GmbH—and the City of Richmond, Virginia.  (Second Am. Compl. at ¶¶ 30-43, *International Fund Management et. al v. Citigroup et al.*, No. 09 Civ. 8755 (S.D.N.Y. Nov. 17, 2010) (hereinafter *IFM* Compl.).)

Norges Bank, Norway's central bank, filed the second action on September 17, 2010. (First Am. Compl. at ¶ 30, *Norges Bank v. Citigroup et al.*, No. 10 Civ. 7202 (S.D.N.Y. Dec. 15, 2010) (hereinafter *Norges* Compl.).)  A pair of affiliated investment fund management companies, Swiss & Global Asset Management AG and Swiss & Global Asset Management (Luxembourg) SA, brought the third three months later.  (Compl. at ¶¶ 30-32, *Swiss & Global Asset Management AG et al. v. Citigroup et al.*, No. 10 Civ. 9325 (S.D.N.Y. Dec. 13, 2010).)  And the plaintiffs in the final action, initiated on January 14, 2011, are a trio of German corporations—Universal-Investment-Gesellschaft mbH, an investment fund management company; Münchener Rückversicherungs-Gesellschaft Aktiengesellschaft in München, a reinsurance company; and MEAG MUNICH ERGO Kapitalanlagegesellschaft mbH, an investment company.  (Compl. at ¶¶ 30-32, *Universal-Investment-Gesellschaft mbH et al. v. Citigroup et al.*, No. 11 Civ. 314 (S.D.N.Y. Jan. 14, 2011).)

These nineteen plaintiffs (collectively, "plaintiffs") have sued Citigroup, Inc., a global financial services holding company, and its subsidiary, Citigroup Global Markets, Inc., which underwrote many of the debt offerings at issue in these actions.  (*IFM* Compl. ¶¶ 44-45.)  They have sued the following directors and officers of Citigroup:  Charles Prince, Vikram Pandit, Gary Crittenden, John C. Gerspach, Robert Druskin, Thomas Maheras, Michael Stuart Klein, Steven Freiberg, C. Michael Armstrong, Alain J.P. Belda, George David, Kenneth T. Derr, John M. Deutch, Roberto Hernandez Ramirez, Andrew N. Livers, Anne M. Mulcahy, Richard D. Parsons, Judith Rodin, Robert L. Ryan, and Franklin A. Thomas.  (*IFM* Compl. ¶¶ 47-66.)  With the exception of Norges Bank, all plaintiffs sue Arthur H. Tildesley, Jr., as well.  (*IFM* Compl. ¶ 67.)  Norges Bank alone sues Citigroup Capital XXI, a Delaware statutory trust.  (*Norges* Compl. ¶ 32.)

B.  The Complaints

"[T]he allegations in the four complaints are identical in most respects."  (Pls.' Opp. to Motion to Dismiss ("Pls.' Opp.") at 6 n.8.)  The complaints are also substantially similar to the complaints in the putative class actions *In re Citigroup Inc. Securities Litigation* and *In re Citigroup Inc. Bond Litigation*.  They allege that plaintiffs suffered losses from alleged misrepresentations and omissions concerning: Citigroup's exposure to collateralized debt obligations ("CDOs"), structured investment vehicles ("SIVs"), alternative A class residential mortgage backed securities ("Alt-A RMBS"), and auction rate securities ("ARS"); the company's mortgage lending practices; and its solvency.  The factual allegations underpinning these claims are set forth in this Court's opinions addressing motions to dismiss in the *Securities* and *Bond* litigation and need not be repeated here.  *See In re Citigroup Inc. Sec. Litig.* ("*Securities*"), 753 F. Supp. 2d 206, 214-31 (S.D.N.Y. 2010); *In re Citigroup Inc. Bond Litig.* ("*Bond*"), 723 F. Supp. 2d 568, 574-82 (S.D.N.Y. 2010).

The complaints bring causes of action pursuant to the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), the common law of New York, and, for the claims arising out of purchases in European offerings, the common law and statutory law of the United Kingdom.

Defendants seek dismissal of all four complaints pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court ordered consolidated briefing of the motions to dismiss.  Though there are four of each, the opinion often refers to the "complaint" or "motion" for simplicity's sake.  The Court adopts the parties' convention of citing to the Second Amended Complaint in *International Fund Management* for allegations common to all complaints.  The Court cites the other complaints as necessary.

4

II.     **DISCUSSION**

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court accepts the truth of the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006).  A complaint should be dismissed if it fails to set forth "enough facts to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The basic pleading burden of "facial plausibility" is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).  Some of plaintiffs' claims are subject to a higher pleading burden, as discussed *infra*.

This motion to dismiss raises iterations of issues addressed in prior opinions in the *Securities* and *Bond* class actions.  The discussion that follows presumes familiarity not only with the relevant factual background of those opinions, but with their legal analysis as well.

A.  Securities Act Claims

Plaintiffs bring causes of action pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act.  Defendants seek to dismiss these claims on the grounds that 1) plaintiffs have failed to plead the existence of actionable misrepresentations or omissions and 2) claims related to certain securities are untimely.

1.  *Adequacy of the pleading*

Securities Act claims need only meet the standards of notice pleading, unless the allegations sound in fraud, in which event the heightened Rule 9 fraud standard applies.  *Bond*,

723 F. Supp. 2d at 586.  Contrary to defendants' position, a complaint does not sound in fraud simply by employing such terms as "misrepresented," "made untrue statements," and "failed to disclose."  *See id.*  Because this complaint sufficiently separates nonfraud claims from fraud claims, Rule 8 applies to the Securities Act claims.  *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 272-73 (3d Cir. 2006); *In re Refco, Inc., Sec. Litig.*, 503 F. Supp. 2d 611, 632-33 (S.D.N.Y. 2007).

Under the Rule 8 standard, defendants' motion seeks dismissal of only the pre-consolidation SIV claims and the ARS claims.[1]  The Court finds that those claims should be dismissed.  (*See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 31.)

### a.   Pre-consolidation SIV claims

In December 2007, Citigroup consolidated its affiliated structured investment vehicles (SIVs) on its balance sheet for the first time.  (*IFM* Compl. ¶¶ 233-34.)  According to plaintiffs, accounting rules required Citigroup to consolidate its SIVs and disclose certain aspects of its involvement with its SIVs prior to that date.  (*Id.* ¶¶ 212-29.)  Citigroup's failure to do so allegedly rendered financial statements for 2004 through 2007 misleading.  (*Id.* ¶¶ 229, 232.)

The viability of these claims turns on whether plaintiffs have adequately alleged the existence of an "implicit guarantee" whereby Citigroup implicitly agreed to assume the SIVs' debts to prevent the SIVs from defaulting.  Plaintiffs have failed to do so.  Some of plaintiffs' allegations (*see id.* ¶ 584; Pls.' Opp. at 7 & n.10) rely on the same faulty hindsight inference the Court rejected in the prior opinions.  *See Bond*, 723 F. Supp. 2d at 591; *Securities*, 753 F. Supp. 2d at 243.  The remaining allegations are that ratings agencies relied on Citigroup's reputation

---

[1]      Defendants recently applied to the Court to supplement their motion to seek dismissal of additional claims in light of the Second Circuit's recent decision in *Fait v. Regions Fin. Corp.*, --- F.3d ---, No. 10-2311-cv, 2011 WL 3667784 (2d Cir. Aug. 23, 2011).  The Court will address that application at a later date.

when rating SIV securities and that Citigroup played multiple managerial roles for the SIVs, including managing liquidity risk.  (*IFM* Compl. ¶¶ 217-25.)   Neither Citigroup's administration of the SIVs nor the fact that the third-party ratings agencies' drew comfort from that fact plausibly support the inference that Citigroup implicitly guaranteed the SIVs debts. Plaintiffs have thus failed to plead a misstatement or omission for the period prior to Citigroup's consolidation of its SIVs.

> b.  ARS claims

Plaintiffs allege Citigroup failed to disclose material information about its auction rate securities (ARS) exposures.  Plaintiffs allege actionable omissions in two respects: 1) Citigroup's failure to disclose its own ARS holdings prior to April 2008, and 2) its failure to disclose liabilities to customers who owned illiquid ARS.

An omission gives rise to liability under the securities law only if "defendants had an affirmative duty to disclose the [omitted] information" or "where disclosure was necessary so as to prevent other information contained in the registration statements from being misleading." *Bond*, 723 F. Supp. 2d at 593.  In both *Bond* and *Securities*, the Court dismissed claims that Citigroup misled investors by failing to disclose ARS-related information because the plaintiffs in those failed to allege a duty to disclose.  *Id.*; *Securities*, 753 F. Supp. 2d at 245-46.  The Court does the same here.

*Failure to disclose ARS holdings.*  Plaintiffs allege that Item 303 of SEC Regulation S-K required Citigroup to disclose its ARS holdings and the liquidity problems associated with them in its November 5, 2007 Form 10-Q and its 2007 Form 10-K, filed February 22, 2008.  (*IFM* Compl. ¶ 295.)  Item 303 "imposes a disclosure duty where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have

material effects on the registrant's financial condition or results of operations."  *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 716 (2d Cir. 2011) (internal quotation marks omitted).

Plaintiffs allege that "a known trend in the collapse of [Citigroup's] ARS business, and the inability to sell ARS securities on its books" triggered Citigroup's disclosure obligation pursuant to Item 303.  (*IFM* Compl. ¶ 306.)  The complaint fails to establish the existence of any alleged trend or its likelihood of materially impacting Citigroup's financial condition as of the relevant dates.   The following facts are pled in support of the trend:

- Summer 2007: Citigroup purchases more ARS as investor demand wanes.  (*Id.* ¶¶ 288-92.)
- Late January – February 2008: ARS auctions increasingly fall, with the entire market seizing up by the end of February.  (*Id.* ¶ 296.)  Some major corporations announce write-downs on their ARS holdings, (*id.* ¶ 300), and lawsuits against ARS brokers-dealers are filed in late February, (*id.* ¶ 297).
- March – April 2008: Regulators reportedly open ARS investigations.  (*Id.*)
- First quarter 2008: Citigroup has difficulty selling its ARS position.  (*Id.* ¶299.)

Most of these events, and certainly the most salient ones, occur *after* November 5, 2007; they do not plausibly establish the existence of a trend *as of* November 5, 2007, the date of the first alleged omission.  Accordingly, plaintiffs have failed to allege a rising trend that would have required Citigroup to disclose its ARS holdings in the Form 10-Q issued that date.  As to the second omission, alleged to have occurred on February 22, 2008, plaintiffs have not pled that Citigroup reasonably expected a trend to have a material impact on its financial results: Plaintiffs alleged that Citigroup knew its ARS could not be sold, but the complaint states that the ARS market did not become illiquid until the *end* of February, and that between mid-February and mid-April Citigroup still sold $3 billion of its ARS inventory.  (*IFM* Compl. ¶¶ 296, 299.) Plaintiffs have thus failed to allege that Item 303 required an ARS disclosure prior to April 2008, and therefore they have not pled an actionable omission.

*Disclosure of liabilities to ARS customers.*  In August 2008, pursuant to a settlement with the Securities and Exchange Commission and the New York Attorney General, Citigroup "agreed to repurchase $7.3 billion of ARS from its disgruntled clients" and disclosed this fact publicly.  (*Id.* ¶ 303.)  Plaintiffs allege that Citigroup's failure to divulge this liability at some unspecified earlier point is an actionable omission.  (*Id.* ¶¶ 307, 308, 356, 402.)  The duty to disclose this information, according to the complaint, arises from Statement of Financial Accounting Standards ("SFAS") No. 115 ¶ 3, which provides that "unrealized holding gains and losses for trading securities shall be included in earnings," (*id.* ¶ 307), and No. 5, which requires a company to "record contingent liabilities when the occurrence of a possible claim is probable and can be reasonably estimated," (*id.* ¶ 309).

Plaintiffs have not adequately established that either accounting standard required Citigroup to disclose the contingent liability before August 2008, when Citigroup repurchased its customer ARS.  Plaintiffs have failed to allege or explain how SFAS No. 115's requirement to post "unrealized holding gains and losses for trading securities" could plausibly require Citigroup to make disclosures regarding securities it did not yet own.  As to SFAS No. 5, plaintiffs have not adequately alleged at what point prior to August 2008, if ever, the liability Citigroup assumed in August 2008 became "probable" and "reasonably estima[ble]," and thus have not adequately alleged that Citigroup violated this rule.  *See Charter Tp. of Clinton Police & Fire Ret. Sys. v. KKR Fin. Holdings LLC*, No. 08 Civ. 7062, 2010 WL 4642554, at *19 (S.D.N.Y. Nov. 17, 2010).  For these reasons the claim of concealment of the contingent liability to ARS customers is dismissed.

2.  *Timeliness*

The Securities Act contains a statute of limitations providing that "[n]o action shall be maintained to enforce any liability created under [Section 11] or [Section 12(a)(2)] of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m.  It also contains a statute of repose which states that "[i]n no event shall any such action be brought to enforce a liability created under [Section 11] . . . of this title more than three years after the security was bona fide offered to the public, or under [Section 12(a)(2)] of this title more than three years after the sale."  *Id.*  Defendants argue that claims concerning six securities at issue are barred by the statute of limitations, and that claims related to the majority of the securities at issue are barred by the statute of repose.  The Court disagrees on both counts.

a.   Statute of Limitations

Defendants contend that claims with respect to six securities—Depositary Shares, 6.875% Notes, 5.5% Notes Due 2013, 6.125% Notes Due 2018, 6.5% Notes, and the e-TruPS bond (the "Challenged Securities")—are untimely.  They argue that the one-year statute of limitations began on November 4, 2007 and that the limitations period for claims based on the Challenged Securities were not tolled prior to November 4, 2008.  The Court assumes for the sake of argument that the limitations period expired on November 4, 2008, yet nevertheless concludes that the claims concerning the Challenged Securities are timely.

In *American Pipe & Construction Co. v. Utah*, the Supreme Court explained that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  414 U.S. 538, 554 (1974).  This tolling rule applies "to class members who file

individual suits before class certification is resolved." *In re WorldCom Sec. Litig.*, 496 F.3d 245, 254 (2d Cir. 2007). Defendants concede that any claims plaintiffs assert with respect to security offerings included in a putative class action prior to November 4, 2008 that remains pending are timely, but argue that claims concerning the Challenged Securities were not asserted in a class action before that date. (*See* Defs.' Mem. at 27-28.) Defendants' factual premise is incorrect.

The putative class action of *Minneapolis Firefighters Relief Association et al. v. Rosen et al.*, No. 08 Civ. 10353—filed in New York state court on October 28, 2008 and subsequently removed and consolidated into the *Bond* class action—included in its class purchasers of the Challenged Securities and asserted claims on their behalf. *See* Appendix A. That class action was consolidated into the *Bond* action and remains pending today. Thus even if the limitations period expired on November 4, 2008, plaintiffs' claims relating to the Challenged Securities are timely pursuant to *American Pipe* and *In re WorldCom* because a class action including the purchasers of the Challenged Securities as class members had been commenced prior to that date.

b. Statute of Repose

Defendants argue that the Securities Act's statute of repose bars plaintiffs from bringing Section 11 and 12(a)(2) claims with respect to securities that were offered or sold more than three years prior to the filing of these actions. Plaintiffs respond that the statute of repose does not bar any of their claims because the pendency of the *Bond* class action—which raised the same claims plaintiffs raise in connection with the same securities plaintiffs purchased—tolled the period of repose pursuant to the doctrine of *American Pipe*. Federal courts are split on whether *American Pipe* tolling applies to the Securities Act's statute of repose. *Compare Joseph v. Wiles*, 223 F.3d 1155, 1166-68 (10th Cir. 2000), *and In re Morgan Stanley Mortg. Pass-*

*Through Certificates Litig.*, No. 09 Civ. 2137, 2011 WL 4089580, at *14-*17 (S.D.N.Y. Sept. 15, 2011) (*American Pipe* tolling applies), *with Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 624-27 (S.D.N.Y. 2011), *and In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017, 2011 WL 1453790, at *2-*3 (S.D.N.Y. Apr. 13, 2011) (*American Pipe* tolling does not apply).  For the foregoing reasons, the Court concludes that *American Pipe* tolling is available.

In *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983), the Supreme Court explained the rationale for the *American Pipe* tolling doctrine as follows:

> The *American Pipe* Court recognized that unless the statute of limitations was tolled by the filing of the class action, class members would not be able to rely on the existence of the suit to protect their rights.  Only by intervening or taking other action prior to the running of the statute of limitations would they be able to ensure that their rights would not be lost in the event that class certification was denied. . . . [In the absence of tolling,] [a] putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations.  The result would be a needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid.

*Id.* at 350-51.  The same reasoning applies to the statute of repose.  The complexity of securities class actions often precludes resolution of the certification question within the three-year repose period.  Without tolling, class members content to remain in the class action would nevertheless need to bring their own suits within the three-year repose period to guard against the possible eventual denial of class certification.  "The result would be a needless multiplicity of actions— precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid."  *Id.* at 351.  Tolling the statute of repose clearly serves the purposes of Rule 23 and the *American Pipe* doctrine.

At the same time, class action tolling does not disserve the purposes of the statute of repose.  The statute of repose is meant "to serve as a cutoff," extinguishing a defendant's liability

to a plaintiff who has failed to assert a claim within the limitations period.  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).  Permitting plaintiffs to opt out of the class action does not contradict that purpose: "because a class action complaint was filed, defendants were on notice of the substantive claim as well as the number and generic identities of potential plaintiffs."  *Joseph*, 223 F.3d at 1168.  "Indeed, in a sense, application of the *American Pipe* tolling doctrine to cases such as this one does not involve 'tolling' at all.  Rather, [plaintiffs] ha[ve] effectively been [] party to an action against these defendants since a class action covering [them] was requested but never denied."  *Id.*; *cf. In re WorldCom*, 496 F.3d at 255 ("[t]he theoretical basis on which *American Pipe* rests is the notion that class members are treated as parties to the class action").  Thus the pending class action prevented the statute of repose from extinguishing defendants' potential liability to these plaintiffs.  That liability should not now be extinguished simply because plaintiffs have in essence exercised their right to opt out of a class action by commencing their own individual lawsuits.

Those courts that reject the applicability of *American Pipe* tolling do so in reliance on the Supreme Court's decision in *Lampf* holding that "the equitable tolling doctrine" does not apply to the Securities Act's statute of repose.  *Lampf*, 501 U.S. at 363; *see Footbridge Ltd. Trust*, 770 F. Supp. 2d at 624-27; *In re Lehman Bros.*, 2011 WL 1453790 at *2-*3.  *Lampf* does not suggest, let alone require, the result those courts reach.  In *Lampf*, the equitable tolling that concerned the Supreme Court was the kind that applies when the plaintiff demonstrates "ignorance of [the fraud] without any fault or want of diligence or care on his part."  *Lampf*, 501 U.S. at 363 (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348 (1874)).  The Court found tolling of this character to be inconsistent with the absolute cutoff required by the statute of repose.  *Lampf*, 501 U.S. at 363.  *American Pipe* tolling has a completely different character.  It is not an

equitable device for excusing ignorance, but a legal device for maintaining efficient class litigation. *See Joseph*, 223 F.3d at 1166-67; *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 2011 WL 4089580 at *16.  The Supreme Court in *Lampf*—which was not a class action—had neither need nor occasion to address whether tolling of this latter type was consistent with the statute of repose.  *See, e.g., Joseph*, 223 F.3d at 1166 ("*Lampf* . . . [is] not relevant in the present context because the tolling that [the plaintiff] seeks is legal rather than equitable in nature.")

Nor does the language of the statute of repose bar *American Pipe* tolling, as one court has suggested, *see Footbridge*, 770 F. Supp. 2d at 624.  The repose statute speaks in absolute terms. *See* 15 U.S.C. § 77m ("In no event shall any action be brought . . . ,").  But the Securities Act's statute of limitations employs comparable language, *see id.* ("No action shall be maintained . . ."), and there is no doubt that it is subject to *American Pipe.  See In re WorldCom*, 496 F.3d at 254.  Indeed, the statute of limitations at issue in *American Pipe* was more emphatically absolute, providing that "any action to enforce any cause of action [under the antitrust laws] shall be forever barred unless commenced" within the limitations period, 15 U.S.C. §§ 15b, 16(b).  *See American Pipe*, 414 U.S. at 560-61.  As the Supreme Court there explained, "the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit" does not preclude tolling "under certain circumstances not inconsistent with the legislative purpose."  *Id.* at 559.

Because tolling the statute of repose would serve the purposes of Rule 23 and would not contravene the purposes of the statute of repose, the Court concludes that *American Pipe* tolling is available in this case.  Accordingly, the statute of repose does not bar claims in these suits.

* * *

In conclusion, the Court grants defendants' motion to dismiss plaintiffs' Securities Act pre-consolidation SIV claims and plaintiffs' ARS claims.  Defendants' motion is denied in all other respects relating to the Securities Act.

B.  Exchange Act Claims

Plaintiffs bring causes of action pursuant to Sections 10(b), 18, and 20(a) of the Exchange Act.  The Court considers each in turn.

1.  *Section 10(b)*

To state a claim pursuant to Section 10(b) and its implementing regulation, Rule 10b-5, "a plaintiff must allege that, in connection with the purchase or sale of securities, the defendant made material misstatements or omissions of material fact, with scienter, and that the plaintiff's reliance on the defendant's actions caused injury to the plaintiff."  *Slayton v. American Exp. Co.* 604 F.3d 758, 765 (2d Cir. 2010).  The complaint must "state with particularity sufficient facts" to support allegations that a given statement or omission was misleading.  *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000); *see* 15 U.S.C. § 78u-4(b)(1).  Scienter must also be pled with particularized facts, and those facts must give rise to an "inference of scienter [that is] cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

a.  CDOs

With two exceptions, the parties agree that the Court's disposition of claims concerning collateralized debt obligations ("CDOs") in *Securities* controls this case.  In *Securities*, the Court sustained CDO-related Section 10(b) claims against defendants Citigroup and Crittenden for the period of February 2007 to April 2008, and against defendants Prince, Druskin, Maheras, and

Klein for the period February 2007 through November 3, 2007.[2]  Defendants concede that those claims should go forward here on the basis of the reasoning in *Securities*.  (Defs.' Mem. at 10-11.)  Pre-February 1, 2007 CDO-related statements are dismissed for the reason they were dismissed in *Securities*.  *See Securities*, 753 F. Supp. 2d at 238.  At issue, however, is whether the Court should dismiss a) allegations of misstatements regarding Citigroup's CDO holdings in the period April 18, 2008 and beyond, and b) the CDO-related claims against defendant Arthur Tildesley.  The Court dismisses the former, but not the latter.

i.   Period of April 18, 2008 and beyond

Plaintiffs allege that CDO write-downs Citigroup announced on April 18, 2008 were insufficient because "Citi had written down its CDO portfolio by just under half, while the relevant [ABX and TABX] indices had lost nearly all their value by early 2008."  (*IFM* Compl. ¶ 357.)  Defendants seek dismissal of this claim, which appears to be the only specific CDO-related statement identified in the April 2008 period or after.

Plaintiffs failed to respond to defendants' motion to dismiss on this point, which is reason itself for dismissal of the claim.  *See Brecher v. Citigroup Inc.*, No. 09 Civ. 7359, 2011 WL 2209145, at *16 (S.D.N.Y. June 7, 2011).  The claim is also deficient because plaintiffs have failed to plead scienter with respect to the April 2008 CDO valuation.  In *Securities*, the Court found a strong inference of scienter on the basis of allegations that Citigroup ignored declines in the ABX and TABX indices when valuing their CDOs *before* April 2008.  *See Securities*, 753 F. Supp. 2d at 241.  That inference is unavailable with regard to the April 2008 valuation, because that valuation explicitly took the ABX index as an input.  (*IFM* Compl. ¶ 260.)  Because

---

[2]  The Court also sustained CDO-related claims against David Bushnell and Robert Rubin.  *See Securities*, 753 F. Supp. 2d at 239.  They are not defendants in these four actions.

plaintiffs have not pled that defendants recklessly ignored relevant data or otherwise acted with scienter, CDO claims concerning the period of April 18, 2008 and after are dismissed.

### ii.  Tildesley

Arthur Tildesley headed Citigroup's Investor Relations department from 2004 to February 2008.  (*Id.* ¶ 67.)  Defendants argue that plaintiffs have not adequately pled scienter for Tildesley.  The Court disagrees.  The complaint alleges that in the spring, summer, and fall of 2007, Tildesley received specific information indicating that Citigroup had billions of dollars in undisclosed subprime CDO exposures.  (*Id.* ¶¶ 597-98, 602, 604.)  These allegations are sufficient to raise a strong inference of recklessness.  *See Novak*, 216 F.3d at 308.  These allegations, however, only pertain to the February 2007 through November 3, 2007 period; there are no allegations that could give rise to a strong inference of scienter for defendant Tildesley on or after November 4, 2007.  Accordingly, the Court finds that plaintiffs have stated a Section 10(b) claim against Tildesley for CDO-related statements between February 2007 and November 3, 2007 only.  Claims against Tildesley for other time periods are dismissed.

### b.  Alt-A RMBS

In *Securities*, the Court dismissed Alt-A RMBS claims for failure to allege an actionable misrepresentation or omission.  *See* 753 F. Supp. 2d at 242.  Plaintiffs concede that their allegations of Alt-A RMBS misrepresentations or omissions are materially identical to the corresponding allegations in *Securities*.  (Ex. B to Decl. of Susanna M. Buergel ("Buergel Decl.") dated Feb. 4, 2011.)  Accordingly, for the reasons set forth in the *Securities* opinion, the Court dismisses plaintiffs' Section 10(b) claims regarding Alt-A RMBS.

c.  ARS

In *Securities*, the Court dismissed ARS claims for failure to allege an actionable omission and for failure to plead scienter.  *See* 753 F. Supp. 2d at 245-46.  Plaintiffs here concede that their allegations of scienter are identical to the corresponding allegations in *Securities*.  (Ex. B to Buergel Decl.)  Accordingly, as set forth in the *Securities* opinion, the Court dismisses plaintiffs' Section 10(b) claims regarding ARS for failure to plead scienter.  For the reasons set forth in Section II.A.1.b, *supra*, the Court also dismisses these claims for failure to plead an actionable omission.

d.  Mortgage Lending

Plaintiffs do not contest dismissal of the mortgage lending and loan loss reserve claims concerning statements or omissions predating June 2006.  (Ex. B to Buergel Decl.)  They do pursue claims that, in June 2006 and after, Citigroup officials misrepresented the quality of the mortgages Citigroup underwrote or held and that Citigroup understated its loan loss reserves in violation of Generally Accepted Accounting Principles.  The Court dismissed analogous claims in *Securities* for failure to plead scienter.  *See Securities*, 753 F. Supp. 2d at 244-45.  The claims here must be dismissed for the same reason.

The only new scienter allegations concern Richard Bowen's testimony before the Financial Crisis Inquiry Commission.  Mr. Bowen is a former Chief Underwriter for Correspondent Lending in Citigroup's Consumer Lending Group.  He testified that from June 2006 through 2007 he issued warnings within Citigroup about risk issues concerning alleged lapses in mortgage underwriting standards.  (*IFM* Compl. ¶¶ 626-27.)  These alleged warnings lack specifics and are vague in both their content and their timing.  As such, they do not

constitute particularized allegations of scienter. *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011).

  e. SIVs

    i. Pre-consolidation SIV claims

  For the reasons set forth in Section II.A.1.a, plaintiffs have failed to plead an actionable misstatement or omission in connection with Citigroup's nonconsolidation of its SIVs prior to December 14, 2007. Accordingly, the corresponding Section 10(b) claims are dismissed.

    ii. Post-consolidation SIV claims

  Plaintiffs allege that Citigroup misrepresented the credit quality of its SIV assets when, in a December 2007 press release, it stated that "[g]iven the high credit quality of the SIV assets, Citi's credit exposure under its commitment [to provide liquidity for the SIVs] is substantially limited." (*IFM* Compl. ¶ 233.) This statement was supposedly false because the SIVs were invested in subprime backed assets. (*Id.* ¶ 350.) The complaint, however, fails to establish what portion of the SIV assets, if any, were U.S. subprime-based securities. (*IFM* Compl. ¶¶ 3, 131, 230, 350.) Plaintiffs' allegation that there was some unspecified amount of credit exposure in the form of subprime assets does not establish that Citigroup's statement was false with the particularity required in a Section 10(b) action.[3]

  Citigroup also allegedly misrepresented the value of the SIVs' assets when it reported in February 2008 that the "consolidation of the SIVs onto the Company's balance sheet had

---

[3] The December 2007 press release containing the challenged statement actually stated that the SIVs had "no direct exposure to sub-prime assets and immaterial indirect sub-prime exposure of $51 million." Citigroup Form 8-K, Dec. 13, 2007, Ex. 12 to Decl. of Richard Rosen dated Mar. 23, 2009, *Brecher v. Citigroup*, No. 09 Civ. 7359; *see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (court may consider SEC filing containing the alleged misstatement). Plaintiffs' vague allegations concerning the SIVs' subprime exposure do not contain any particularized factual matter that contradicts Citigroup's statement on this point.

resulted in an *increase* of Citi's asset base of $59 billion."  (*Id.* ¶ 234.)  To establish falsity, plaintiffs allege that

> [o]n November 19, 2008, Citi disclosed that the SIVs were so impaired that it could not find a buyer.  Citi paid $17.4 billion to wind down the SIVs and bring the assets onto its balance sheet, writing down those assets by another $1.1 billion at the same time.

(*Id.*)  This is hindsight pleading that does not state a claim.  *See Securities*, 753 F. Supp. 2d at 246.

### f.   Solvency

#### i.   Pandit's Statements

In *Securities*, the Court dismissed as puffery certain statements that CEO Vikram Pandit made about Citigroup's overall financial health and capital status.  *See* 753 F. Supp. 2d at 248. Because plaintiffs' allegations are no different, as they concede, (Ex. B to Buergel Decl.), their claims relating to Pandit's statements are dismissed for the same reason.

#### ii.   Asset Valuation

Plaintiffs allege that Citigroup repeatedly overvalued its assets in financial filings for the years 2006, 2007, and 2008.  (*IFM* Compl. ¶ 278.)  In their opposition to the motion to dismiss, plaintiffs argue that their success in stating a claim concerning CDO valuation means that they necessarily stated a claim with respect to Citigroup's overall asset valuation.  The complaint, however, concerns Citigroup's "total assets," (*id.*), including the valuation of "subprime related direct exposures, monoline credit value adjustments, highly leveraged finance commitments, Alt-A mortgages, ARS, commercial real estate, and SIVs," (*id.* ¶ 282).  Plaintiffs have not adequately pled falsity or scienter with respect to the valuation of this array of assets.  Because plaintiffs may not rely on viable CDO claims to state claims concerning the valuation of these myriad assets, the total asset valuation claims are dismissed.

### iii.  Capital Adequacy

Plaintiffs allege that Citigroup misstated its Tier 1 capital ratio from 2006 through the third quarter in 2008 because that ratio was calculated in reliance on overvalued subprime-related assets, understated loan loss reserves, and misleading "Repo 105" transactions.  (*Id.* ¶¶ 313, 315.)  These claims are dismissed for failure to plead scienter.  Plaintiffs have not submitted particularized allegations of scienter with respect to the loan loss reserves or Repo 105 transactions.  And, as with asset valuation, viable claims with respect to CDOs cannot sustain the substantively and temporally broader claims concerning capital adequacy.

### g.  European Offerings

The complaint can be construed to assert Section 10(b) causes of action in connection with securities purchased in European offerings.  Defendants contend correctly, and without any objection from plaintiffs, that *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2884 (2010), precludes Section 10(b) claims in relation to securities purchased in European offerings.  Accordingly, any Section 10(b) claims that relate to securities purchased in European offerings are hereby dismissed.

### 2.  *Section 18*

Plaintiffs assert claims pursuant to Section 18 of the Exchange Act for alleged misstatements and omissions contained in Citigroup's 2006 Form 10-K and the 2007 Form 10-K. (*IFM* Compl. ¶ 496.)  The Section 18 cause of action requires plaintiffs to plead "that (1) a false or misleading statement was contained in a document filed pursuant to the Exchange Act (or any rule or regulation thereunder); (2) defendant made or caused to be made the false or misleading statement; (3) plaintiff relied on the false statement; and (4) the reliance caused loss to the plaintiff."  *In re Alstom SA*, 406 F. Supp. 2d 433, 478 (S.D.N.Y.  2005).  In particular, plaintiffs

must allege actual reliance, i.e. "that they actually read and relied on the filed document. Constructive reliance is not sufficient." *Id.* at 479; *see In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 283 (3d Cir. 2006) (citing *Heit v. Weitzen*, 402 F.2d 909, 916 (2d Cir. 1968)); *Ross v. A.H. Robins Co., Inc.*, 607 F.2d 545, 552 (2d Cir. 1979).

Plaintiffs have failed to plead actual reliance. Plaintiffs allege only that "[i]n connection with [their] purchases of Securities after February 23, 2007, Plaintiffs and/or their investment managers read and relied upon Citi's 2006 Form 10-K, including the false financial statements and other statements alleged herein to be false or misleading." (*IFM* Compl. ¶ 499.) They include an identical allegation for the 2007 Form 10-K. (*Id.* ¶ 500.) These allegations do not meet the threshold requirement that a complaint "set forth enough facts to state a claim to relief that is plausible on its face" as explained in *Twombly* and *Iqbal*. *Twombly*, 550 U.S. at 570. They are conclusory. They are incredibly broad, alleging reliance on entire 10-Ks for indefinite periods of time. And they lack supporting factual matter indicating how plaintiffs relied on the alleged misrepresentations. The Court can only conclude that plaintiffs have not met their pleading burden. *See Iqbal*, 129 S. Ct. at 1949. The Section 18 claims are accordingly dismissed.

### 3. *Section 20(a)*

Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), creates a cause of action against defendants alleged to have been "control persons" of those who violate the Exchange Act. "To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

Plaintiffs assert control person claims against defendants Prince, Pandit, Crittenden, Gerspach, Druskin, Maheras, Klein, and Tildesley.[4]   Defendants do not contest the control person status of these individuals.

Plaintiffs have stated primary violations of the Exchange Act relating to statements concerning Citigroup's CDO holdings over the February 2007 to April 2008 period.  For the period of February 2007 through November 3, 2007, plaintiffs have adequately pled scienter for defendants Prince, Crittenden, Druskin, Maheras, Klein, and Tildesley.  It follows that plaintiffs' have pled culpable participation for these defendants for that period of time.  *Securities*, 753 F. Supp. 2d at 249.  With respect to defendant Crittenden, plaintiffs have adequately pled scienter, and thereby culpable participation, for the period from February 2007 to April 2008.  Control person claims against these defendants corresponding to the relevant time periods may proceed.

Though plaintiffs assert in their opposition that they have pled culpable participation as to defendants Pandit and Gerspach, they do not specify how and they previously conceded that they had not, (Ex. B to Buergel Decl.).  Accordingly, the CDO-related control person claims against these defendants are dismissed.

The other control person claims—which rely on the remaining Section 10(b) claims and the Section 18 claims as underlying violations—are dismissed for failure to plead a primary violation of the Exchange Act.

> C.  New York Common Law Claims

> 1.  *Fraud and Conspiracy to Commit Fraud*

Plaintiffs assert claims of fraud under New York common law.  "The elements of common-law fraud are a representation of a material fact, falsity, scienter, reliance, and injury." *Kline v. Taukpoint Realty Corp.*, 302 A.D.2d 433, 433 (2d Dep't 2003).  The requisite reliance is

---

[4]        Norges Bank does not allege a Section 20(a) claim against Tildesley.

actual reliance, not the presumed reliance of a Section 10(b) action.  *See Secs. Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 73 (2d Cir. 2000).  Plaintiffs concede this point with respect to misleading affirmative statements, but argue that they are entitled to a presumption of reliance for misleading omissions.  Such a presumption exists in the context of a Section 10(b) action.  *See Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 153-54 (1972).  Courts in this district, however, have repeatedly refused to import this presumption into New York common law.  *See, e.g.*, *Feinberg v. Katz*, No. 01 Civ. 2739, 2007 WL 4562930, at *5-*6 (S.D.N.Y. Dec. 21, 2007); *Waksman v. Cohen*, No. 00 Civ. 9005, 2002 WL 31466417, at *5 (S.D.N.Y. Nov. 4, 2002); *Banque Arabe Et Internationale D'Investissement v. Maryland Nat. Bank*, 850 F. Supp. 1199, 1221-22 (S.D.N.Y. 1994); *Turtur v. Rothschild Registry Int'l, Inc.*, No. 92 Civ. 8710, 1993 WL 338205, at *7 (S.D.N.Y. Aug. 27, 1993).  The Section 10(b) presumptions serve the specific prophylactic purposes of the federal securities laws, but are not appropriate in the common law context.  *See Secs. Investor Prot. Corp.*, 222 F.3d at 73; *Banque Arabe*, 850 F. Supp. at 1221-22; *see also Basic Inc. v. Levinson*, 485 U.S. 224, 244 n. 22 (1988) ("Actions under Rule 10b-5 are distinct from common-law deceit and misrepresentation claims and are in part designed to add to the protections provided investors by the common law.").  Plaintiffs must therefore show actual reliance for misrepresentations *and* omissions.

They have not done so.  Like their Section 18 reliance allegation, plaintiffs' reliance allegation in the context of their fraud claim, (*IFM* Compl. ¶ 683), is too conclusory to state a claim to relief.  Plaintiffs' claims of common law fraud are therefore dismissed.

Plaintiffs also assert a conspiracy to commit fraud.  (*Id.* ¶ 682.)  Since plaintiffs have failed to plead fraud, their conspiracy claim necessarily fails.  *See, e.g.*, *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 437 (S.D.N.Y. 2010).  Conspiracy also requires "a corrupt agreement

between two or more parties," *Fezzani v. Bear, Stearns & Co. Inc.*, 592 F. Supp. 2d 410,

429 (S.D.N.Y. 2008), which plaintiffs have not pled.  Their attempt to meet this element relies on

allegations that certain defendants attended meetings together where CDO exposure was

discussed.  (*IFM* Compl. ¶¶ 566, 597-600, 604.)  This joint attendance at company meetings does

not plausibly suggest the existence of a corrupt agreement.  *See de Atucha v. Hunt*, 128 F.R.D.

187, 190 (S.D.N.Y. 1989).  What it suggests is merely that corporate managers meet regularly to

discuss corporate business.

### 2. *Negligent Misrepresentation*

Norges Bank asserts that defendants Citigroup, Citigroup Capital XXI, and Citigroup

Global Markets are guilty of negligent misrepresentation.  (*Norges* Compl. ¶¶ 480-87.)  "A claim

for negligent misrepresentation can only stand where there is a special relationship of trust or

confidence, which creates a duty for one party to impart correct information to another, the

information given was false, and there was reasonable reliance upon the information given."

*Hudson River Club v. Consolidated Edison Co. of New York, Inc.*, 275 A.D.2d 218, 220, 712

N.Y.S.2d 104 (1st Dep't 2000).

Norges Bank has failed to plead reliance adequately (*see, e.g.*, *Norges* Compl. ¶ 485), and

its negligent misrepresentation claim must be dismissed on that basis.  *See supra* Section II.C.1.

The claim also fails because of the absence of a special relationship.  A "special relationship

requires a closer degree of trust than that in an ordinary business relationship."  *Wright v. Selle*,

27 A.D.3d 1065, 1067, 811 N.Y.S.2d 525 (4th Dep't 2006).  An ordinary business relationship,

however, is all that is present—and all that is alleged—here.  Norges Bank "was simply one

more customer that relied on the misrepresentations allegedly made by the defendants to the

public when it purchased" Citigroup securities.  *Prime Mover Capital Partners, L.P. v. Elixir*

*Gaming Technologies, Inc.*, No. 10 Civ. 2737, 2011 WL 2465963, at *2 (S.D.N.Y. June 22, 2011).  "This is not the sort of 'special relationship' on which to base recovery for negligent misrepresentation."  *Id.*; *cf. Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 674 (S.D.N.Y. 2009) (no special relationship where the parties were simply the buyer and seller of corporate stock).

      D.  <u>U.K. Law Claims</u>

      *1.  Misrepresentation Act of 1967 and Common Law Deceit*

      In connection with Citigroup securities purchased in European offerings, plaintiffs bring causes of action pursuant to the United Kingdom's Misrepresentation Act of 1967 and the U.K.'s common law of deceit.  Both claims require plaintiffs to plead reliance.  *See Raiffeisen Zentralbank Osterreich AG* v. *Royal Bank of Scotland*, [2010] EWHC (Comm) 1392 [153]; *Lindsey v. O'Loughnane*, [2010] EWHC (QB) 529 [86].  As discussed *supra*, plaintiffs have not pled actual reliance.  Plaintiffs nevertheless again try to avail themselves of a presumption of reliance, again to no avail.  They argue that reliance can be "inferred" for the purposes of their U.K. claims "if it is proved that the defendants with a view to induce the plaintiff to enter into a contract made a statement to the plaintiff of such a nature as would be likely to induce a person to enter into a contract."  *Spice Girls v. Aprilia World Serv. BV*, [2002] EWCA (Civ) 15 [70].  Beyond stating this legal principle, however, plaintiffs do not establish why an inference of reliance is appropriate in this case.  The cases they cite involve direct contractual negotiations between parties, *see, e.g.*, *id.*; *Dadourian Grp. Int'l, Inc. v. Simms*, [2009] EWCA (Civ) 169, not impersonal purchases of securities on an open market.  The Court will not infer reliance solely on the basis of these inapposite cases.  Accordingly, plaintiffs Misrepresentation Act claims and deceit claims are dismissed.

### 2. *U.K. Financial Services and Markets Act of 2000*

Plaintiffs' final cause of action is brought pursuant to Section 90 of the U.K. Financial Services and Markets Act of 2000. The parties have conceded for purposes of the present motion that the Section 90 claims are viable to the same extent as plaintiffs' claims pursuant to Section 12(a)(2) of the Securities Act. (*See* Defs.' Mem. at 39; Pls.' Opp. at 43.) Accordingly, the Court dismisses the Section 90 pre-consolidation SIV claims and ARS claims; the remaining Section 90 claims will go forward.

### III. CONCLUSION

For the reasons set forth, defendants' motion to dismiss is granted in part and denied in part. The New York common law claims and the U.K. Misrepresentation Act and deceit claims are dismissed. With respect to the Securities Act and U.K. Financial Services and Markets Act claims, the motion is granted for plaintiffs' pre-consolidation SIV claims and plaintiffs' ARS claims, but in all other respects is denied. For the Exchange Act claims, the motion is denied with respect to those claims the Court sustained in *Securities* as well as the Section 10(b) and 20(a) CDO claims against defendant Tildesley for the period of February 2007 through November 3, 2007, but in all other respects is granted.

Dated: New York, New York
      September 30, 2011

SO ORDERED:

Sidney H. Stein, U.S.D.J.

27

Appendix A

The Challenged Securities are described in the complaints as follows:

| Security | ISIN | Issue Date |
|---|---|---|
| Depositary Shares representing a 1/25th interest in a share of 8.4% fixed rate/floating rate Non-Cumulative Preferred E Stock Series E <br> (*IFM* Compl. ¶¶ 72(ii), 87) | US172967ER86 | Apr. 28, 2008 |
| 6.875% Notes Due 2038 <br> (*IFM* Compl. ¶¶ 72(xxiii), 85) | US 172967EP21 | Mar. 5, 2008 |
| 5.5% Notes Due 2013 <br> (*IFM* Compl. ¶¶ 72(xxiv), 86) | US172967EQ04 | Apr. 11, 2008 |
| 6.125% Notes Due 2018 <br> (*IFM* Compl. ¶¶ 72(xxv), 88) | US172967ES69 | May 12, 2008 |
| 6.5% Notes Due 2013 <br> (*IFM* Compl. ¶¶ 72(xxvi), 89) | US172967EU16 | Aug. 19, 2008 |
| 8.3% Enhanced Trust Preferred Securities <br> (*Norges* Compl. ¶¶ 59(ii), 68) | US173094AA18 | Dec. 21, 2007 |

The putative class action of *Minneapolis Firefighters Relief Association et al. v. Rosen et al.*, No. 08 Civ. 10353, asserted claims on behalf of purchasers of the same Citigroup securities as follows:

| Security | CUSIP[*] | Issue Date |
|---|---|---|
| Depositary Shares Each representing a 1/25[th] Interest in a share of 8.40% fixed Rate/Floating Rate Non-Cumulative Preferred Stock Series E <br> (*Minn.* Compl. at 29) | 172967ER8 | Apr. 28, 2008 |
| 6.875% Notes due 2038 <br> (*Minn.* Compl. at 29) | 172967EP2 | Mar. 5, 2008 |
| 5.5% Notes due 2013 <br> (*Minn.* Compl. at 29) | 172967EQ0 | Apr. 11, 2008 |
| 6.125% Notes due 2018 <br> (*Minn.* Compl. at 29) | 172967ES6 | May 12, 2008 |
| 6.500% Notes due 2013 <br> (*Minn.* Compl. at 29) | 172967EU1 | Aug. 19, 2008 |
| Citigroup Capital XXI 8.300% Enhanced Trust Preferred Securities <br> (*Minn.* Compl. at 31) | 173094AA1 | Dec. 21, 2007 |

---

[*] The *Minneapolis Firefighters* plaintiffs identified the securities by CUSIP, whereas plaintiffs here used the ISIN. "ISIN and CUSIP are interrelated designations, since CUSIP numbers can be converted into ISIN numbers by adding the United States or Canada's country code to the beginning of each particular CUSIP code and digital designation of the instrument at the end of such CUSIP." *Murakush Caliphate of Amexem Inc. v. New Jersey*, No. Civ. A. 11-1317, 2011 WL 1871431, *12 n.14 (D.N.J. May 13, 2011). Thus, subtracting the first two letters from and the last digit from an ISIN yields the CUSIP. Applying this rule to the charts above, it is clear that the securities in the two charts are identical.